[Civ. No. 36800. Second Dist., Div. Three. Feb. 24, 1971.]

INDEPENDENT JOURNAL NEWSPAPERS, Plaintiff and Appellant, v. UNITED WESTERN NEWSPAPERS, INC., et al., Defendants and Respondents

**COUNSEL**

W. Mike McCray for Plaintiff and Appellant.

Fogel, McInerny, Dealey & Baggaley, Ball, Hunt, Hart, Brown & Baerwitz and Albert H. Ebright for Defendants and Respondents.

**OPINION**

**COBEY, Acting P. J.**—Plaintiff, Independent Journal Newspapers, a corporation, appeals from a judgment of dismissal of the action, made and entered on motion of defendants, United Western Newspapers, Inc., a corporation, and Deane Funk, pursuant to Code of Civil Procedure, sections 581, subd. 3 and 581d. The basis for the dismissal was the failure of plaintiff to amend within the time specified by the court following the sustaining of defendants' general and special demurrer, made on numerous grounds, to plaintiff's first amended complaint.

More specifically (see Code Civ. Proc., § 472d), the trial court sustained defendants' special demurrer for uncertainty (Code Civ. Proc., § 430, subd. 7) to both causes of action of plaintiff's first amended complaint in certain specific particulars,[1] and defendants' general demurrer

---

[1]Defendants' special demurrer for uncertainty was sustained on the following specific grounds:

1. "It cannot be ascertained from the allegations [of the first cause of action] of plaintiffs' alleged first amended complaint whether or not plaintiff is complaining of the free distribution or distribution below cost of both advertising and newspapers or of advertising alone."

2. "It cannot be ascertained from the allegations [of the first cause of action] of plaintiff's complaint in what way or manner they, or either of them, is giving away any article or product, *for the purpose of* . . . injuring competitors or destroying competition."

3. "It cannot be ascertained from the allegations [of the second cause of action] of plaintiff's first amended complaint in what way or manner defendant [*sic*] is al-

to both causes of action of the complaint on the ground that the Unfair Practices Act cannot be applied constitutionally to newspapers.

This action is a statutory one for injunctive and monetary relief for alleged violations of sections 17043 (sales below cost—first cause of action) and 17044 (prohibiting loss leaders—second cause of action) of the Unfair Practices Act (Bus. & Prof. Code, § 17000 et seq.).[2] We note that defendants' general and special demurrer to plaintiff's initial complaint (sales below cost only) was sustained as to the general demurrer only and upon the specific grounds that the violation alleged came, if at all, only under section 17045 (secret rebates, etc.) and that the cost of advertising was but a part of plaintiff's [*sic*] cost of doing business. (See § 17029.)

We have before us only the validity of the trial court's sustaining defendants' demurrer to plaintiff's first amended complaint and not the validity of the court's reasons therefor. (*Weinstock* v. *Eissler,* 224 Cal.App.2d 212, 225 [36 Cal.Rptr. 537].) We will not concern ourselves with either the correctness of the court's action in sustaining the special demurrer for uncertainty or with the soundness of its conclusion that the Unfair Practices Act cannot be applied constitutionally to newspapers. ▇ We inquire only whether the facts pled in plaintiff's first amended complaint constituted a cause of action under either section 17043 or section 17044 of the Unfair Practices Act. In view of the failure of plaintiff to exercise the privilege granted it of amending its first amended complaint after defendants' demurrer thereto was sustained, we need determine only whether plaintiff stated any cause of action under the Unfair Practices Act in its first amended complaint, and not whether it might have been able to do so. (See *Chicago Title Ins. Co.* v. *Great Western Financial Corp.,* 69 Cal.2d 305, 311-312 [70 Cal.Rptr. 849, 444 P.2d 481].)

In essence, plaintiff pled in its first amended complaint that: plaintiff printed, published and distributed various weekly newspapers including The Santa Monica Independent, Venice—Mar Vista Independent, Culver City—Mar Vista Journal and Suburbia West Today; defendants printed, published and distributed a daily newspaper known as the Santa Monica Evening Outlook and the following weekly newspapers: Roberts News,

---

legedly selling or using an article or product as a 'loss leader' as defined in Business and Professions Code Section 17030."

4. "It cannot be ascertained from the allegations [of the second cause of action] of plaintiff's first amended complaint in what way or manner defendant [*sic*] is allegedly acting 'to divert trade from and otherwise injure competitors including Plaintiff herein.' "

[2]All section references are to the Business and Professions Code unless otherwise indicated.

West Los Angeles Independent, Westwood Hills Press, Culver City Edition of West Los Angeles Independent, Beverly Hills Independent, Palisades—Malibu News, Marina News and Topanga Lookout; both plaintiff and defendants gave away these weekly newspapers free of charge to their recipients; both plaintiff and defendants derive a major portion of their income from the sale of advertising space to the public in these weekly throwaways; plaintiff and defendants are in direct competition with each other in attempting to sell advertising space in these throwaways in the overlapping parts of their respective distribution areas as shown on maps incorporated in the complaint; both plaintiff and defendants publish and distribute these weekly throwaways on Thursday of each week; since December 1, 1963, defendants have offered to those who purchase classified advertising in their daily newspaper on Wednesday the publication and distribution of the same advertising in their weekly throwaways at no additional cost.[3]

In addition to the foregoing facts plaintiff pled in its first cause of action on information and belief that defendant sold advertising space below cost to various advertising customers with the intent of injuring competitors and destroying competition. This conclusion is without meaning, however, unless its factual basis lies in the specific facts we have just set forth. Similarly, in its second cause of action plaintiff apparently pleads the tie-in in classified advertising that we have described as a proscribed loss leader. These conclusions, whether they be denominated conclusions of fact or law were not admitted by defendants' demurrer. (*Chicago Title Ins. Co. v. Great Western Financial Corp., supra,* 69 Cal.2d 305, 327; *Addiego v. Hill,* 238 Cal.App.2d 842, 845 [48 Cal.Rptr. 240].)

A purpose of the Unfair Practices Act is to foster and encourage competition by prohibiting unfair practices by means of which fair and honest competition is destroyed or prevented. (See § 17001.) Section 17043 makes it unlawful to sell any article or product at less than the cost thereof to the seller or to give away any article or product for the purpose of injuring competitors or destroying competition. Section 17044 makes it unlawful to sell (or use) any article or product as a "loss leader." A loss leader is defined in section 17030 as an article or product sold at less than

---

[3] A classified advertisement would appear to be a "thing of value" within the meaning of section 17024 defining article or product. "Sale" under section 17022 includes offering for sale or advertising for sale. Since the customer had to purchase classified advertising in defendants' daily newspaper in order to have the same advertising appear, without additional charge, in defendants' weekly newspapers, the latter advertising was not free within the meaning of section 17023. (See *Food & Grocery Bureau v. Garfield,* 20 Cal.2d 228, 234 [125 P.2d 3].) This tie-in would be illegal under the Unfair Practices Act only if it were a device to sell classified advertising below the cost thereof. (See § 17049.)

cost where, among other things, the effect is to divert trade from or otherwise injure competitors. (See *Ellis* v. *Dallas*, 113 Cal.App.2d 234, 239 [248 P.2d 63].)

In order to have a violation of either section 17043 or section 17044, a sale below cost must occur.[4] No facts tending to show such a sale of classified advertising space by defendants in their weekly newspapers was pled by plaintiff in its first amended complaint. Without discovery (see §§ 17083-17085) plaintiff could not be expected to know exactly what was defendants' cost of advertising space sold in defendants' weekly newspapers for the price of one insertion of the advertisement in the Wednesday edition of their daily newspaper. But, according to plaintiff's first amended complaint, it published several weekly newspapers and through its own cost experience it could have alleged on information and belief a supposed cost figure for such space in defendants' weekly newspaper. Furthermore, it could have easily obtained the rate for one insertion of classified advertising in defendants' daily newspaper and then have pled, if such were the fact, that defendants' sale of advertising space in its weekly newspapers on the tie-in basis was a sale below cost and therefore possibly a violation of both section 17043 and section 17044.

Plaintiff did not do this. This omission prevented it from stating a cause of action under the Unfair Practices Act against defendants in its first amended complaint. (See *Green* v. *Grimes-Stassforth S. Co.*, 39 Cal.App. 2d 52, 56 [102 P.2d 452].)

The judgment of dismissal is affirmed.

Schweitzer, J., and Allport, J., concurred.

---

[4]Under section 17071, proof of the sale of an article or product below cost together with proof of the injurious effect of such act creates a rebuttable presumption that the seller did so with the purpose or intent of injuring competitors or destroying competition. (See *Balzer* v. *Caler*, 11 Cal.2d. 663, 665-666 [82 P.2d 19].) We note that plaintiff's first amended complaint may be deficient in failing to set forth any specific facts at all, other than the amounts of damage claimed, as regards the injurious effect of defendants' tie-in of its sales of classified advertising. An injurious effect, however, is not an essential element of a violation of the Act. A violation is complete when a sale below cost is made with the requisite intent and not within any of the exceptions. (*People* v. *Pay Less Drug Store*, 25 Cal.2d 108, 113-114 [153 P.2d 9].)